521 So.2d 170 (1988)
Sadie BAXLEY, as Personal Representative of the Estate of Lloyd Donald Baxley, Appellant,
v.
DIXIE LAND & TIMBER CO., a Foreign Corporation, and Ellis Hatcher, a Florida Resident, Appellees.
No. BS-223.
District Court of Appeal of Florida, First District.
February 8, 1988.
Rehearing Denied March 17, 1988.
*171 Gregory W. Johnson, Jacksonville, for appellant.
W. Douglas Childs and William H. McKnight of Bullock, Childs & Mickler, P.A., Jacksonville, for Appellee Dixie Land & Timber Co.
ZEHMER, Judge.
Sadie Baxley appeals a final summary judgment in favor of Dixie Land & Timber Company (Dixie) granted on the ground that the independent contractor exception to the inherently dangerous work doctrine, recognized in Florida Power & Light v. Price, 170 So.2d 293 (Fla. 1964), bars her suit. Drawing all inferences most favorably for Mrs. Baxley as the party moved against, the record before us reveals the following facts.
Dixie is a "timber broker." It buys timber from owners and sells the timber to paper mills. Dixie had a written contract with Gilman Paper Company (Gilman) covering Dixie's sale and delivery of timber to its mill. The agreement was not before the court, and William R. Davis, a principle in Dixie, could not remember the terms of that contract at his deposition. Generally, to get the timber it purchased to the mill, Dixie would contract with a logger (referred to as a "producer") to cut and deliver the timber to the mill in Dixie's name and under its authorization. When the logger or producer would arrive at the mill with the timber, he would be given a ticket indicating the amount of timber delivered. The mill would pay Dixie for all wood so delivered.
In this particular case, Ellis Hatcher (Hatcher) owned some timber and contracted to sell it to Dixie. Dixie in turn contracted with Hatcher to cut and deliver the timber to Gilman in Dixie's name under its contract with Gilman. Hatcher thereby participated in two separate capacities; one, he was an owner who sold timber to Dixie as might any other timber owner, and two, he was an independent contractor with one employee who contracted with Dixie to act as a producer to cut and haul the timber to Gilman in Dixie's name. As producer, Hatcher decided to cut and deliver some of the timber himself, and contracted with Lloyd Baxley (Baxley) to cut and deliver the remainder. Baxley had a separate operation for cutting and hauling logs. He, too, had one employee, and he furnished his own tools and equipment and performed his work independently of Hatcher.
On the date of the accident, Baxley had already performed his work under the contract with Hatcher by cutting and delivering the timber to Gilman in Dixie's name. Having completed his job, he went to the location where Hatcher was cutting and loading logs to present his delivery ticket to Hatcher and collect the money owed to him. Hatcher and his employee had only a few logs left to load onto the truck, so Baxley sat on a stump to wait for them to finish. During the loading process Hatcher or his employee removed a log from a sapling causing the tree, which was bowed and under tension, to spring forth and strike Baxley in the head, killing him.
Sadie Baxley, Baxley's mother and personal representative, subsequently filed suit against Dixie and Hatcher alleging that Dixie negligently hired Hatcher to conduct its work and negligently failed to exercise reasonable care in maintaining proper control of Hatcher. She also alleged that logging is inherently dangerous work, and thus Dixie owed a nondelegable duty of care to Baxley and was legally responsible for the negligence of Hatcher and Hatcher's employees.
Both Dixie and Hatcher filed motions for summary judgment. After hearing these motions, the trial court determined that neither Dixie nor Hatcher had a statutory duty to provide workers' compensation coverage, *172 therefore neither was immune from suit under the workers' compensation statute.[1] The court found that Baxley was an independent contractor of Hatcher, Hatcher was an independent contractor of Dixie, and logging is inherently dangerous work. It ruled that in the absence of active negligence on its part, Dixie was immune from suit under the independent contractor exception to the inherently dangerous work doctrine. Dixie's motion for summary judgment was granted and Hatcher's motion for summary judgment was denied. Baxley filed this appeal from the entry of that summary judgment. Hatcher's cross-appeal from the denial of his motion was voluntarily dismissed.
The question before us is whether the trial court erred in granting summary judgment for Dixie upon its ruling as a matter of law that Baxley fell within the rationale of the independent contractor exception recognized in Florida Power and Light v. Price. The precise issue, narrowly stated, is whether Baxley's legal status vis-a-vis Hatcher at the time and place of the accident was that of fellow employee rather than a third party.[2]
Ordinarily an owner, contractor or employer is not liable for injuries to employees of an independent contractor sustained by them in their work for such owner, contractor or employer, unless it is shown that the contracting employer causes or contributes to causing the injury by its own active negligence. 2 Fla.Jur.2d, Agency and Employment §§ 109, 115 (1977). The inherently dangerous work doctrine, however, recognizes that one engaged in or responsible for the performance of work legally characterized as inherently dangerous is said to be under a nondelegable duty to perform, or have others perform, the work in a reasonably safe and careful manner, and thus "an employer may be held liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous." Peairs v. Florida Publishing Company, 132 So.2d 561 (Fla. 1st DCA 1961). See generally, 2 Fla.Jur.2d, Agency and Employment §§ 113, 116 (1977).
In Florida Power & Light v. Price, 170 So.2d at 298, the supreme court recognized an exception held to bar recovery under the inherently dangerous work doctrine. In that case, the plaintiff, an employee of the independent contractor engaged by Florida Power & Light (FP & L) to install an electrical distribution system in a subdivision, which would be connected to FP & L's electrical transmission system, was injured by another employee of that same independent contractor during the performance of that work. Holding FP & L not liable to the injured employee, the supreme court stated:
We hold that liability flowing from operation of the doctrines of dangerous instrumentalities and inherently dangerous work is subject to the exception that where the defendant owner contracts with an independent contractor for the performance of inherently dangerous work and the latter's employee is injured by a dangerous instrumentality owned by the defendant which is negligently applied or operated by another employee of the independent contractor but wholly without any negligence on the part of the defendant owner, the latter will not be held liable. The incidence of the independent contractor and injury to his employee in the course of the performance of the inherently dangerous work absent any negligence on the part of the contracting *173 owner absolves the latter from liability.
... The independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies and is aware or presumed to be aware of the usual hazards incident to the performance of his contract. Unless and until it is shown the contracting owner by positive act of negligence or negligent omission on his part causes injury to the independent contractor or to the latter's employee or employees, such owner will not be held liable. The employees of the independent contractor do not become the employees of the contracting owner within the contemplation of chapter 769, F.S., nor are they under his direction and control... . Thus it may be said the exception to the doctrines grows out of the relationship created by the independent contract and the assumption of risks that are necessarily concomitant. Such an exception would not be applicable where members of the general public are injured since they are not embraced in the relationship created by the independent contract.

170 So.2d at 298-99 [emphasis added]. From this language, we conclude that the owner/employer's nondelegable duty to have inherently dangerous work performed in a reasonably safe manner runs only to third party members of the public not engaged in activities falling within the scope of the contractual relationship between the owner/employer and the independent contractor hired to perform such work. The owner/employer is relieved of this nondelegable duty as to persons injured while performing the inherently dangerous work, whether they be employees of the independent contractor or employees of subcontractors hired by it to perform part of the work, based on the contractual relationship between the owner and the independent contractor and the risks necessarily assumed by such contractor, its employees, and its subcontractors in performing the work.
Thus, in Hofer v. Southland Corporation, 370 So.2d 1246 (Fla. 4th DCA 1979), cert. denied, 381 So.2d 767 (Fla. 1980), the court held that where a defendant land owner was having a building constructed by a general contractor, who, in turn, had employed a roofing subcontractor and an air conditioning subcontractor to perform part of the work, the defendant owner was not liable to an employee of the air conditioning subcontractor injured on the job by the negligence of an employee of the roofing subcontractor. Citing Florida Power & Light v. Price, the court said:
We hold the same rationale applies to bar the liability in the instant situation where the employee of one subcontractor injures the employee of another subcontractor while both are engaged in the common contractual labor under the supervision and control of the general contractor.

370 So.2d at 1247 [emphasis added].
On the other hand, in Channell v. Musselman Steel Fabricators, Inc., 224 So.2d 320 (Fla. 1969), the supreme court held that where a land owner had hired the defendant contractor to erect a steel structure and the contractor had subcontracted a portion of the work, the defendant contractor was liable under the inherently dangerous work doctrine to the plaintiff owner, who, being an experienced construction worker, had visited the project one day and was injured by the negligence of the subcontractor while voluntarily assisting it to perform a portion of the work. Declining to apply the rationale of the Florida Power & Light v. Price decision, the court said:
The fact that Channel [plaintiff] owned the land and was in privity with Musselman [defendant contractor] has no bearing on his right to recover in tort from Musselman. There is no reasonable relationship between Channell's status as owner of the premises and his injury. Musselman was in possession and control during the construction and selected the negligent subcontractor, Florida Steel, without knowledge or consent of Channell.
224 So.2d at 321.
The distinction we distill from these cases is that the rationale of Florida Power *174 and Light v. Price will be applicable if the plaintiff is an employee of the contractor or a subcontractor and sustains injuries while both are engaged in the performance of the work contemplated by the contract. Where, however, the injured plaintiff is not engaged in performing such work at the time he is injured, his status is that of a third party and the rationale of Florida Power and Light v. Price is not applicable under the holding in Channell v. Musselman Steel Fabricators. Applying this rule, we conclude that the court below erred in granting summary judgment to Dixie.
For purposes of this opinion, we treat the cutting, loading and delivering of logs to Gilman Paper Company as inherently dangerous work as that finding by the trial court is not challenged on this appeal. Similarly, Dixie is the "broker" or employer having a contract with Gilman to purchase and supply timber to Gilman. It purchased timber from Hatcher, and then it contracted with Hatcher to cut logs and haul them to Gilman in Dixie's name in the performance of that contract. So, for purposes of this appeal, we shall assume without deciding as a matter of law that Dixie is a contractor under a nondelegable duty to see that the inherently dangerous logging operation to cut, haul, and deliver the timber to Gilman is performed in a reasonably safe manner, at least insofar as third parties are concerned.[3]See Channell v. Musselman Steel Fabricators, Inc., 224 So.2d 320. The narrow issue we decide is whether Baxley occupied the equivalent legal status of the "fellow employee" defined in Florida Power & Light.
We hold that the record fails to demonstrate as a matter of law that Baxley fell within the fellow employee status. One could infer from the record that Baxley was employed to perform inherently dangerous work under his subcontract with Hatcher at a completely different location than that of Hatcher's work where he was killed. Baxley was not at the site to assist Hatcher in cutting and hauling timber. Baxley had completed his work and was merely presenting Gilman's delivery tickets for the purpose of collecting the money Hatcher owed him. For ought that appears, Baxley could have delivered the delivery tickets to Hatcher at Hatcher's home or office, just as any other creditor of Hatcher might deliver a bill to him. Certainly the record does not require the exclusive inference that Baxley was jointly engaged in the inherently dangerous work then being performed by Hatcher under his contract with Dixie. If a jury should find that Baxley was not so engaged, the rationale of Florida Power & Light v. Price would not apply to bar Dixie's liability to Baxley because, at the time of the accident, Baxley would have occupied the legal status of a third party rather than a fellow employee of Hatcher. For this reason, the lower court erred in granting summary judgment for Dixie on this issue.
The summary final judgment is reversed and the cause is remanded for further proceedings in accordance herewith.
REVERSED AND REMANDED.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] Dixie carried workers' compensation insurance pursuant to its contract with Gilman Paper Company which covered its producers, including Baxley, and it deducted $1 per cord from the amounts due for wood delivered to pay the premiums on such insurance. Workers' compensation benefits were paid to Sadie Baxley, but these benefits were unsolicited, and the court determined that her receipt of the benefits did not constitute an election of remedies. Whether Dixie was under other contractual duties in respect to its producers cannot be determined from this record.
[2] On this appeal by Baxley, we do not review any rulings regarding the applicability of the workers' compensation statute, chapter 440, Florida Statutes.
[3] See generally the discussion of the legal status of timber brokers in Peterson v. Highland Crate Co-op., 156 Fla. 539, 23 So.2d 716 (1945); Lindsey v. Willis, 101 So.2d 422 (Fla. 1st DCA 1958); and Gray v. Hull, 114 So.2d 176 (Fla. 1st DCA 1959). Whether timber brokers and the ones they employ to actually cut and haul the timber are agents/employees or independent contractors is ordinarily a question of fact for the trier of fact, Lindsey v. Willis, but such issue may be determined as a matter of law where there is no conflicting evidence or inference that may be drawn from the evidence, Peterson v. Highland Crate Co-op.; Lindsey v. Willis. Since the trial court has treated Dixie, Hatcher and Baxley as independent contractors for purposes of passing on the motions for summary judgment, we shall do likewise by indulging all apparently conflicting inferences most favorably for appellant Baxley. We cannot say that the record before us completely excludes any inference that Dixie was not responsible for the safe conduct of the timber cutting and hauling operation. Thus we do not now decide whether this issue should ultimately be submitted to a jury for determination under appropriate instructions.